IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

UNITED STATES OF AMERICA,

          Plaintiff,

v.                                                        CRIMINAL ACTION NO. 2:17-cr-00062-2

CARL CLARK,

          Defendant.


MEMORANDUM OPINION AND ORDER

Pending before the court is Defendant Carl Clark's pro se, letter-form motion for compassionate release. [ECF No. 400]. In the motion, Mr. Clark requests a reduction in his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). For me to reduce or modify Mr. Clark's sentence under compassionate release, I must find that he has exhausted his administrative remedies within the Bureau of Prisons or waited 30 days from petitioning the Warden at the facility in which he is housed, that he has demonstrated "extraordinary and compelling reasons," and find that his release is consistent with the § 3553(a) factors. *See e.g., United States v. Howard*, No. 4:15-CR-00018-BR, 2020 WL 2200855, at *2 (E.D.N.C. May 6, 2020); 18 U.S.C. § 3582(c)(1)(A).

I.      Background

On April 23, 2018, Defendant was convicted of distribution of a quantity of methamphetamine under 21 U.S.C. § 841(a)(1). [ECF No. 133]. I sentenced him to 135 months of imprisonment. [ECF No. 256]. According to the Bureau of Prisons ("BOP"), Defendant's projected release date is December 8, 2026. *Find an Inmate*, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/index.jsp (last visited Jan. 25,

2021). He is currently imprisoned at the minimum-security satellite camp at Federal Correctional Institution Ashland ("FCI Ashland"), in Kentucky.

FCI Ashland is a low security institution with an adjacent minimum security satellite camp. FCI Ashland houses a total of 937 inmates (153 at the camp and 820 at the correctional institution). *FCI Ashland*, Fed. Bureau of Prisons, https://www.bop.gov/locations/institutions/ash/ (last visited Jan. 25, 2021). As of January 25, 2021, there are 3 active cases of COVID-19 among inmates and 10 active cases of COVID-19 among staff at FCI Ashland. *See COVID-19 Cases*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus (last visited Jan. 25, 2021). In addition, the Bureau of Prisons ("BOP") reports that 6 FCI Ashland inmates have died from COVID-19, and 348 inmates and 42 staff have recovered from the disease. Mr. Clark alleges he suffers from several medical conditions including, as relevant here, obesity. [ECF No. 400, at 3].

Mr. Clark has previously requested compassionate release several times. [ECF Nos. 385, 387, 394]. I denied those motions for a failure to demonstrate extraordinary and compelling reasons justifying his release. [ECF Nos. 390, 395].

## II.     Discussion

The First Step Act "embodies Congress's intent to reduce the Bureau of Prison's authority over compassionate release petitions and authorizes the district courts to exercise their independent discretion to determine whether there are 'extraordinary and compelling reasons' to reduce a sentence." *United States v. Galloway*, No. CR RDB-10-0775, 2020 WL 2571172, at *3 (D. Md. May 21, 2020) (internal citations omitted); *see also United States v. Stephenson*, No. 3:05-CR-00511, 2020 WL 2566760, at *5 (S.D. Iowa May 21, 2020) ("Unqualified deference to the BOP no longer makes sense now that the First Step Act has reduced the BOP's role.").

For me to reduce Mr. Clark's sentence under compassionate release, I must find that he has exhausted his administrative remedies and demonstrated "extraordinary and compelling reasons," and find that his release is consistent with the 18 U.S.C. § 3553(a) factors. *See e.g., United States v. Howard*, No. 4:15-CR-00018-BR, 2020 WL 2200855, at *2 (E.D.N.C. May 6, 2020); 18 U.S.C § 3582(c)(1)(A). As I will explain, to find "extraordinary and compelling reasons" exist by reason of COVID-19, Mr. Clark must demonstrate that he has a medical condition listed by the Centers for Disease Control and Prevention ("CDC") as causing an increased risk of severe illness from COVID-19 and that he is at a facility which cannot effectively prevent the spread of the virus.

### a) Exhaustion of Administrative Remedies and Section 3582(c)(1)(A)

The First Step Act empowers criminal defendants to request compassionate release for "extraordinary and compelling reasons." 18 U.S.C § 3582(c)(1)(A)(i). But before they make such requests, defendants must ask BOP to do so on their behalf and then wait 30 days. *See* § 3582(c)(1)(A). Upon such a motion from BOP or from a defendant (after BOP denies the request or thirty days have elapsed since the request was filed), a court "may reduce the term of imprisonment. . . ." 18 U.S.C. § 3582(c)(1)(A)(i); *see also United States v. McCoy*, 981 F.3d 271, 283 (4th Cir. 2020).

In this motion, Mr. Clark attached his most recent request of the warden for compassionate release, made on November 25, 2020. [ECF No. 400, at 4–5]. That request was denied on December 4, 2020. *Id.* Because more than 30 days have passed since Mr. Clark petitioned the warden, I find that he has exhausted his administrative remedies. As such, I now turn to whether Mr. Clark has alleged extraordinary and compelling reasons that would justify compassionate release.

### b) Extraordinary and Compelling Reasons

Once an inmate has satisfied administrative exhaustion, a court may reduce his sentence upon a finding of "extraordinary and compelling reasons." *See* 18 U.S.C. § 3582(c)(1)(A). I have joined other courts in holding that I cannot find that "extraordinary and compelling" reasons exist to grant release because of COVID-19 unless the inmate has a condition that makes him or her more at risk for developing a serious illness from COVID-19 *and* the facility where the inmate is housed has conditions such that its inmates are at a high risk of contracting COVID-19. *See United States v. Boston*, No. 2:19-cr-00162, 2021 WL 77466, at *3–4 (S.D. W. Va. Jan. 7, 2021); *See also United States v. Raia*, 954 F.3d 594, 594 (3d Cir. 2020) ("But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release . . . ."); *United States v. Penaloza*, No. 19-238, 2020 WL 1555064, at *2 (D. Md. Apr. 1, 2020) ("[T]he mere presence of the virus, even in the detention setting, does not translate to the release of a person accused."). In addition, I have held that an inmate cannot demonstrate extraordinary and compelling reasons exist due to COVID-19 when the inmate has been vaccinated against the disease.

In deciding which conditions result in an inmate being a higher risk for COVID-19, I will defer to CDC's list of medical conditions causing an increased risk of severe illness from COVID-19. *See Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Jan. 20, 2021). Using CDC guidance allows for more predictable standards in deciding which defendants have "extraordinary and compelling" reasons justifying release. If an inmate can demonstrate that he has a condition identified by CDC, next, the

defendant must show that his prison conditions are such that BOP cannot effectively prevent the spread of COVID-19. Factors include but are not limited to the steps BOP has taken to stop the spread of COVID-19 in that particular prison and steps to follow CDC guidance, the ability of inmates to socially distance, the amount of hygiene products and face masks provided to inmates, and the number of COVID-19 cases in that prison.

I have previously found that Mr. Clark suffers from health conditions that put him at a high risk for serious illness should he contract COVID-19. Namely, Mr. Clark is obese, alleging a BMI of 41. [ECF No. 395, at 8–9]. Severe obesity, defined as a BMI of 40 or higher, is on the CDC list of conditions that put someone at an increased risk for serious illness should he contract COVID-19. I adopt those earlier findings here and I **FIND** that Mr. Clark has satisfied the first requirement to establish extraordinary and compelling reasons.

However, I cannot find that Mr. Clark is at a facility that cannot control the spread of COVID-19. In his Motion, Mr. Clark refers to an outbreak that occurred at FCI Ashland during November and December of 2020. When Mr. Clark wrote his Motion, he claims that there were 295 active cases of COVID-19 at FCI Ashland. But, according to the data provided by the BOP, there have never been more than 200 active cases of COVID-19 at FCI Ashland at one time. The number of cases peaked on December 1, 2020, at 189 cases. *See Active COVID-19 Cases Over Time*, Office of the                                    Inspector                                    General, https://experience.arcgis.com/experience/ab22fb4c564e4f4b986e257c685190e8/page/ page_2/ (last visited Jan. 25, 2021). By the time that Mr. Clark's administrative remedies had been exhausted on December 25, 2020, that number was at 32 active cases. *Id.* As of today, there are only 3 active cases of COVID-19 at FIC Ashland. *Id.*

The number of active cases at FCI Ashland has been consistently dropping since mid-December and has remained low for several weeks. *See id.*

I have previously discussed the steps that FCI Ashland is taking to prevent the spread of COVID-19. [ECF No. 395, at 11–13]. The steps taken by FCI Ashland have helped it get its recent outbreak under. Further, Mr. Clark is currently housed at the Camp at FCI Ashland rather than at the FCI itself. Mr. Clark has provided no information about how many cases there are at the Camp rather than at FCI as a whole. Because FCI Ashland has regained control of the spread of COVID-19 and because Mr. Clark is housed at the Camp, I cannot find that extraordinary and compelling reasons exist to grant compassionate release in this case.

Because Mr. Clark has not demonstrated extraordinary and compelling circumstances, I need not determine whether the § 3553(a) factors would support Mr. Clark's release.

### III.   Conclusion

For the foregoing reasons, Mr. Clark's Motion for Compassionate Release [ECF No. 400] is **DENIED.** The court **DIRECTS** the Clerk to send a copy of this Order to the defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal

ENTER:      January 27, 2021

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE