IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.                           CRIMINAL ACTION NO. 2:17-cr-00062-2

CARL CLARK,

        Defendant.

MEMORANDUM OPINION AND ORDER

Pending before the court is Defendant Carl Clark's Emergency Motion for Compassionate Release. [ECF No. 425]. In his motion, Mr. Clark requests a reduction in his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). *Id.* Mr. Clark previously filed an Emergency Request for Compassionate Release on December 10, 2020, [ECF No. 400], which I denied on January 27, 2021, [ECF No. 401]. Mr. Clark filed a Motion for Reconsideration on February 8, 2021. [ECF No. 405]. I denied the motion as moot because Mr. Clark filed a notice of appeal on the same day that he filed his Motion for Reconsideration. [ECF No. 414]. For the reasons explained below, I have reconsidered my findings in the January 27, 2021 Memorandum Opinion and Order entered in this case. Upon a thorough review of the record, I find that "extraordinary and compelling reasons" exist to warrant an immediate reduction of Mr. Clark's

sentence to time served. Mr. Clark's Emergency Motion for Compassionate Release is **GRANTED**.

I. Background

On August 14, 2017, Mr. Clark was convicted under 21 U.S.C. § 841(a)(1) for distributing a quantity of methamphetamine. [ECF No. 133]. I sentenced him to 135 months of imprisonment. [ECF No. 256]. According to the Bureau of Prisons ("BOP"), Mr. Clark's projected release date is December 8, 2025. *Find an Inmate*, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/index.jsp (last visited Nov. 16, 2022). He is currently imprisoned at the minimum-security satellite camp at Federal Correctional Institution Ashland ("FCI Ashland") in Kentucky.

Mr. Clark alleges that he suffers from several medical conditions, including severe obesity. [ECF No. 400, at 3]. He has requested compassionate release several times. [ECF Nos. 385, 387, 394, 400]. I denied those motions for failure to demonstrate "extraordinary and compelling reasons" justifying his release. [ECF Nos. 390, 395, 401]. In his current motion, Mr. Clark argues that the court previously found "that the BOP cannot effectively control the spread of COVID-19 at FCI Ashland" and granted compassionate release to two other FCI Ashland inmates within the same time frame in which his last motion was denied. [ECF No. 425, at 2]. Indeed, Mark Earl Henderson was granted compassionate release on December 10, 2020, based on his physical condition and the "severe outbreak of COVID-19 at FCI Ashland." *United States v. Henderson*, No. 2:99-cr-00214-1, 2020 WL 7264461, at *4

2

(S.D.W. Va. Dec. 10, 2020). At the time, I found that the number of COVID-19 cases among FCI Ashland inmates had skyrocketed "from single digits to nearly 180 in the span of a few weeks," which demonstrated that the BOP was unable to control the spread of the virus. *Id.* On January 15, 2021, I also granted compassionate release to Jeremiah Joe Johnson based on the conditions at FCI Ashland. *United States v. Johnson*, No. 2:17-cr-00109, 2021 WL 149858, at *3 (S.D.W. Va. Jan. 15, 2021). There, I stated that while the COVID-19 outbreak at FCI Ashland had improved with "only [3] inmates and 10 staff [testing] positive" for COVID-19, "the totality of the circumstances [demonstrated] that [the] BOP [could not] effectively control the spread of COVID-19 at FCI Ashland." *Id.* at *2–3. Twelve days later, I denied Mr. Clark's Emergency Request for Compassionate Release because "[t]he number of active cases at FCI Ashland ha[d] been consistently dropping since mid-December and ha[d] remained low for several weeks." *United States v. Clark*, No. 2:17-cr-00062-2, 2021 WL 277815, at *3 (S.D.W. Va. Jan. 27, 2021). At the time, however, the number of reported active inmate cases was the same as in *Johnson*. *Id.*

II.  **Discussion**

The First Step Act "embodies Congress's intent to reduce the Bureau of Prison's authority over compassionate release petitions and authorizes the district courts to exercise their independent discretion to determine whether there are 'extraordinary and compelling reasons' to reduce a sentence." *United States v. Galloway*, No. CR RDB-10-0775, 2020 WL 2571172, at *3 (D. Md. May 21, 2020)

3

(internal citations omitted); *see also United States v. Stephenson*, 461 F. Supp. 3d 864, 871 (S.D. Iowa 2020) ("Unqualified 'deference to the BOP no longer makes sense now that the First Step Act has reduced the BOP's role.'" (quoting *United States v. Fox*, No. 2:14-cr-03, 2019 WL 3046086, at *3 (D. Me. July 11, 2019))).

For me to reduce Mr. Clark's sentence under compassionate release, I must find that he has exhausted his administrative remedies, that he has demonstrated "extraordinary and compelling reasons" for a reduction in sentence, that he is not a danger to others or the community, and that his release is consistent with the 18 U.S.C. § 3553(a) factors. *See United States v. Howard*, No. 4:15-CR-00018, 2020 WL 2200855, at *2 (E.D.N.C. May 6, 2020); 18 U.S.C. § 3582(c)(1)(A).

### a) Exhaustion of Administrative Remedies

The First Step Act empowers criminal defendants to request compassionate release for "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A)(i). But before they make such requests, defendants must ask the BOP to do so on their behalf and then wait 30 days. *See* § 3582(c)(1)(A). Upon such a motion from the BOP or from a defendant (after the BOP denies the request or 30 days have elapsed since the request was filed), a court "may reduce the term of imprisonment." *Id.*; *see also United States v. McCoy*, 981 F.3d 271, 283 (4th Cir. 2020).

Mr. Clark attached to his motion his most recent request to the warden for compassionate release, made on August 13, 2021. [ECF No. 425, at 12]. Mr. Clark has not received a response. *Id.* at 2, 12. Because more than 30 days have passed since

4

Mr. Clark petitioned the warden, I find that he has exhausted his administrative remedies. As such, I now turn to whether Mr. Clark has alleged "extraordinary and compelling reasons" that would justify compassionate release.

### b) Extraordinary and Compelling Reasons

Once an inmate has satisfied administrative exhaustion, a court may reduce the inmate's sentence upon a finding of "extraordinary and compelling reasons." *See* 18 U.S.C. § 3582(c)(1)(A). The Fourth Circuit has determined that district courts may take an individualized approach in determining whether "extraordinary and compelling reasons" are established. *McCoy*, 981 F.3d at 286. Therefore, "district courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" *Id.* at 284 (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d Cir. 2020)).

As I explained in my earlier rulings on Mr. Clark's compassionate release motions, I have held that "extraordinary and compelling reasons" exist to grant release because of COVID-19 where the inmate has a condition that makes him or her more at risk for developing a serious illness from COVID-19 *and* the facility where the inmate is housed has conditions such that its inmates are at a high risk of contracting COVID-19. *See United States v. Boston*, No. 2:19-cr-00162, 2021 WL 77466, at *3–4 (S.D.W. Va. Jan. 7, 2021). In deciding which conditions result in an inmate being a higher risk for COVID-19, I have deferred to the CDC's list of medical conditions causing an increased risk of severe illness from COVID-19. *See*

5

*Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Nov. 17, 2022). If an inmate demonstrated that he had a condition identified by the CDC, he next had to show that his prison conditions were such that the BOP could not effectively prevent the spread of COVID-19.

When I ruled on Mr. Clark's Emergency Request for Compassionate Release on January 27, 2021, I found that Mr. Clark suffers from a health condition that puts him at a high risk for serious illness should he contract COVID-19. *Clark*, 2021 WL 277815, at *3. Namely, Mr. Clark is obese, having a BMI of 45. *See id.* Severe obesity, defined as a BMI of 40 or higher, is on the CDC's list of conditions that put someone at an increased risk for serious illness should the person contract COVID-19. *Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions*, *supra*. Thus, I found that Mr. Clark satisfied the first requirement in establishing "extraordinary and compelling reasons." *Clark*, 2021 WL 277815, at *3.

At the time, I did not find that Mr. Clark met the second requirement to show "extraordinary and compelling" circumstances—that FCI Ashland could not control the spread of COVID-19. *Id.* On reconsideration of the facts, however, I find it apparent that FCI Ashland could not control the spread of COVID-19 at the time. *See Henderson*, 2020 WL 7264461, at *4; *Johnson*, 2021 WL 149858, at *3. As explained above, Mark Earl Henderson was granted compassionate release on December 10,

6

2020, based on his physical condition and the "severe outbreak of COVID-19 at FCI Ashland." *Henderson*, 2020 WL 7264461, at *4. I granted Jeremiah Joe Johnson compassionate release for similar reasons on January 15, 2021. *Johnson*, 2021 WL 149858, at *3. At the time I decided *Henderson*, FCI Ashland had nearly 180 confirmed cases of COVID-19 among its inmate population. *Henderson*, 2020 WL 7264461, at *1. One month later, on January 15, 2021, I found that the conditions at FCI Ashland had improved "with only [3] inmates and 10 staff [testing] positive" for COVID-19. *Johnson*, 2021 WL 149858, at *2. But, after considering the totality of the circumstances of the recent COVID-19 outbreak at FCI Ashland, I found that the "BOP [could not] effectively control the spread of COVID-19 at [the facility]" at the time. *Id.* at *3. I decided Mr. Clark's motion twelve days after *Johnson*. Because the circumstances at FCI Ashland had not changed in the interim between the two cases and Mr. Clark had a medical condition that placed him at higher risk for serious illness if he contracted COVID-19, I should have found that Mr. Clark had demonstrated that "extraordinary and compelling reasons" existed to justify his release in January 2021.[1]

---

[1] Today, an FCI Ashland inmate would have great difficulty demonstrating that "extraordinary and compelling reasons" exist to grant release because of COVID-19. The number of reported COVID-19 cases has remained extremely low since the outbreak at the facility in late-2020 through early-2021. *See Facility-Level BOP COVID-19 Trends*, Dep't of Just. Off. of the Inspector Gen., https://experience.arcgis.com/experience/ab22fb4c564e4f4b986e257c685190e8/page/page_2 (last visited Nov. 18, 2022). Since March of 2022, the reported inmate active cases at FCI Ashland have not exceeded 6 at any given time, and as of today, there are no reported cases of COVID-19 among inmates at the facility. *Id.* Thus, it appears that FCI Ashland has regained and maintained control of the spread of COVID-19 over the past year.

On reconsideration, I find that the disparity in treatment between Mr. Clark and Mr. Henderson and Mr. Johnson constitutes an "extraordinary and compelling" reason to warrant an immediate reduction of Mr. Clark's sentence to time served.[2] The First Step Act, which vested greater discretion to courts in granting compassionate release, was enacted to remedy unwarranted sentencing disparities. *United States v. Collington*, 995 F.3d 347, 360 (4th Cir. 2021); *Galloway*, 2020 WL 2571172, at *3; *see also McCoy*, 981 F.3d at 288 (finding that the district courts did not err in relying on gross disparities to determine that "extraordinary and compelling reasons" existed for the defendants' sentence reductions). An Act intended to promote such a purpose could not contemplate the level of disparate treatment observed between the similarly situated individuals in this case. Thus, I find that "extraordinary and compelling reasons" exist to justify reducing Mr. Clark's sentence.

Next, I must determine whether the § 3553(a) factors support Mr. Clark's release. I find that they do.

### c) Danger and Safety to the Community and Section 3553(a) Factors

Having found that Mr. Clark has exhausted his administrative remedies and demonstrated "extraordinary and compelling reasons," I must now determine whether granting him compassionate release is consistent with 18 U.S.C. § 3553(a).

---

[2] To be clear, I am not reducing Mr. Clark's sentence based on the COVID-19 conditions at FCI Ashland or based on the standard for COVID-19 related compassionate release motions. Rather, the unique circumstances in this case—the disparity in treatment between similar parties—convinces me that "extraordinary and compelling reasons" exist to grant relief apart from the COVID-19 standard.

8

Section 3553(a) directs courts to consider several factors when determining an appropriate sentence. These factors include the history and characteristics of the defendant; the nature and circumstances of the offense; the kinds of sentences available; and the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from further crimes by the defendant. 18 U.S.C. § 3553(a).

In 2017, Mr. Clark was convicted of distributing a quantity of methamphetamine in violation of 18 U.S.C. § 841(a)(1). [ECF No. 137]. Mr. Clark's offense was serious, as reflected by his 135-month sentence. His projected release date is December 8, 2025, and thus Mr. Clark has served nearly 65% of his sentence. During his incarceration, Mr. Clark has completed numerous educational and vocational programs. *See* [ECF No. 425, at 7–8, 16–19]. He is currently employed as a commissary clerk. *Id.* at 7. Mr. Clark states that he acquired his driver's license to perform his job and that he "travels without supervision . . . outside the camp to the commissary warehouse [in] the community." *Id.* at 3. As of March 4, 2022, Mr. Clark's Individual Needs Plan included no incident reports within the previous 6 months, and according to Mr. Clark, he has been incident free since his incarceration. *Id.* at 3, 7.

At the time Mr. Clark committed the instant offense, he was suffering from drug addiction. He began using methamphetamine daily from 2002 until his arrest in 2017. [ECF No. 267, at 27]. Since his incarceration, Mr. Clark has "participate[d]

9

in NA/AA meetings on a regular basis." [ECF No. 425, at 8]. Mr. Clark now leads the NA/AA classes, and he states that he "values his sobriety." *Id.* at 3.

Mr. Clark is severely obese and prediabetic. [ECF No. 394-1, at 12, 45]. He is the father of three children, all of whom reside in South Charleston, West Virginia. [ECF No. 267, at 26]. Mr. Clark has indicated that he will live with his grandmother in Charleston, West Virginia upon his release. [ECF No. 387, at 2; ECF No. 425, at 4]. He states that he has "several job prospects[] and will begin employment as soon as possible after release." [ECF No. 387, at 2; ECF No. 425, at 4].

I have considered the § 3553(a) factors and find that release after 5.5 years served will reflect the seriousness of the offense, promote respect for the law, and provide just punishment for Mr. Clark's crimes. I further find that Mr. Clark is not likely to pose a risk to others or the community upon his release. *See United States v. Rodriguez*, No. 17-CR-157, 2020 WL 3051443, at *4 (S.D.N.Y. June 8, 2020) (finding that the defendant did not pose a danger where the defendant "d[id] not appear to have incurred disciplinary infractions since he was sentenced, and ha[d] instead consistently taken advantage of dozens of courses offered by [the] BOP"). I further find that Mr. Clark has a strong support network in the community, a chance to find gainful employment, and a stable place to reside.

### III. Conclusion

For the foregoing reasons, Mr. Clark's Emergency Motion for Compassionate Release is **GRANTED**. Mr. Clark's sentence is **modified to TIME SERVED to be**

followed by a **3-year term of supervised release**. He is to be released **IMMEDIATELY**. The court **DIRECTS** the Clerk to send a copy of this Order to the defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal.

ENTER: November 22, 2022

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

11